# CHARLESTON.

## O'Connor *v.* Dils.

### (Holt, President, *concurring.*)

Submitted September 12, 1896, Decided December 30, 1896.

1. Justice of the Peace—*Forms of Action.*
   Common-law forms of actions, in so far as justices' trials are concerned, are entirely abolished by section 49, chapter 50, Code. (p. 56.)

2. Damages for a Wrong—*Money Due on Contract*
   The words "damages for a wrong" are, in substance, according to their legal definition, equivalent to the words, "money due on contract"; the former phrase being broader than and including the latter according to ordinary legal phraseology and meaning. (p. 57.)

3. Statutory Actions—*Recovery of Money—Pleading.*
   Where a person sues to recover money lost at gambling, stolen, or for which *indebitatus assumpsit* would lie at common-law, either phrase is sufficient in the summons to describe the cause of action. (p. 58.)

4. Justice of the Peace — *Statutory Actions—Actions ex Contractu and ex Delicto.*
   The provisions of chapter 50 of Code were not intended to keep up the distinction between actions *ex contractu* and *ex delicto* as at the common-law. (p. 60.)

Error to Circuit Court, Kanawha county.

Action by Patrick O'Connor against William Dils before a justice of the peace. Judgment for defendant. Plaintiff appealed to the circuit court. From a judgment for plaintiff, defendant brings error.

*Affirmed.*

Kennedy & Dyer for plaintiff in error.

Brown, Jackson & Knight for defendant in error.

Dent, Judge :

Patrick O'Connor sued William Dils, before a justice of the county of Kanawha, for a certain sum of money lost at gambling. He moved to quash summons, because it summons him to answer an action "for damages for a wrong" instead of "money due on contract." The justice overruled the motion, but rendered final judgment in favor of

defendant. Plaintiff appealed, and the circuit court rendered judgment in his favor for the sum of one hundred and nine dollars. The defendant obtained a writ of error, and now assigns as error that the circuit court refused on his motion to strike out the evidence as showing a variance between the same and the writ.

There are two questions presented for consideration: First. Was the summons part of the pleadings, and, if so, had the court a right to amend it? Second. Is the summons sufficient to cover the case made out in evidence? If the summons is a part of the pleadings, the circuit court had a right to amend it, under clause 10, section 50, c. 50, Code, which is in these words: "The pleadings may be amended at any time before the trial or during the trial when by such amendment substantial justice will be promoted." It is provided by clause 2 of same section that the pleadings "may be oral or in writing," and this would indicate that the summons is not to be considered part of the pleadings, but, having served the purpose of bringing the defendant into court, it had fulfilled its mission, and therefore was no longer to be regarded, and the motion to strike out the evidence was properly overruled, as the pleadings were oral, and written out in the justice's record, as appears from the transcript. If the summons is to be regarded in the light of a pleading, or a part thereof, the justice had the right to amend the same; and this he can do and did do by entry of the oral pleadings on his docket. The effect being to produce the amendment, it is not necessary to set out in words that the summons is hereby amended by striking out certain words and inserting others, but the additional pleading and the summons will be read together, and all unnecessary words be regarded as surplusage. That being the case, the summons, as amended, would read that the defendant was summoned or called upon to answer an action for money won by him from the plaintiff at gambling. This would give defendant complete notice of the plaintiff's cause of action. In the case of *Fouse* v. *Vandervort*, 30 W. Va. 334 (4 S. E. 302,) it is said: "The summons is not in all respects intended to be a substitute in justices' courts for the declaration in courts of records. And especially is this so in regard to stating the cause of action, because the statute ex-

pressly provides for a complaint to be filed by the plaintiff in which he shall state his cause of action. It is sufficient to state in the summons in a general manner the nature of the plaintiff's claim and the amount for which he will demand judgment. If there is any error in this respect, it can be remedied in the complaint which the plaintiff is required to file." The distinction really to be drawn between the words "for money due upon contract" and "damages for a wrong," while partakng of the same nature, is not to be referred to the common law, but to section 8 of the chapter, which provides. "The jurisdiction of justices within their several districts and counties shall extend to all civil actions for the recovery of money, or the possession of property including actions in which damages are obtained as a compensation for a wrong." And it is provided in section 49, "The forms of action now existing shall not apply to justice's courts and there shall hereafter be but one form of action in said courts, which shall be denominated a civil action." Thus entirely abrogating all common-law forms except as provided in the chapter. So it is in the chapter alone that we must look for the settlement of the question under discussion.

In the first place, there is but one form of action, which is a civil action, and this determines the character of the summons. Then all that follows after the words "civil action" in the summons, to wit: "for money due on contract," or "for damages for a wrong," is a statement of the cause of action, and is, therefore, pleading to that extent, and hence would be amendable, not by a change in the summons, but by the complaint, either oral, entered on the justice's docket, or in writing. This is why no provision is made for the amendment of the summons, for the complaint does that to the extent the summons states the cause of action. The form of the summons given is not intended to be unchangeable, but section 26 provides that it shall be in such "form or substance," and also provides "but no summons shall be quashed or set aside for any defect therein if it be sufficient on its face to show what is intended thereby." Hence the conclusion follows that the legislature, in using the words "money due on contract" or "for damages for a wrong," as the case may be, was not prescribing the form of the complaint, but was simply

suggesting the manner in which the cause of action could be stated; and therefore any other statement which, in substance, would, amount to the same thing, would be sufficient to satisfy the requirements of the statute. Then, are the words "damages for a wrong" in substance the same as "money due on contract"? The meaning of the word "damages" is a compensation, recompense, or satisfaction in money; "wrong" means any deprivation of right, breach of contract, or injury done by one person to another. Hence "damages for a wrong" means "money given for a breach of contract" as well as any other deprivation of right or injury to person or property. The words "damages for a wrong" therefore not only include "money due on contract," but money which one is entitled to recover off of another for any purpose whatsoever, and is the much broader and more inclusive expression. In substance, then, the statute was fully complied with, and the court did not err in refusing to reject the plaintiff's evidence, or to set aside the verdict and grant the defendant a new trial. It is especially provided in clause 9, s. 50, c. 50, Code, that "a variance between the proof on the trial and the allegations of a pleading shall be disregarded as immaterial unless the justice shall be satisfied that the adverse party has been misled to his prejudice." This would cure all defects of the summons as a pleading. Therefore the justice did not err in refusing to quash the summons. The judgment should be affirmed.

HOLT, PRESIDENT, (*concurring*).

Chapter 50 of the Code, containing two hundred and thirty-nine sections, is intended to be a complete code of procedure for justices of the peace. It provides (section 49) that there shall be but one form of action which shall be denominated a civil action. Each action is a special action on the particular case, and the complaint must state in a plain and direct manner the facts constituting the cause of action. The copy of the complaint is not served, but the suit is instituted and the parties are brought together by the service on the defendant of a summons, which makes the broad classification of (1) a civil action for the recovery of money due on contract; (2) for damages for a wrong, as the case may be, which comprehends such civil wrongs as do not arise from

breach of contract as are within the jurisdiction of the justice. See section 8 *et seq.* See preface and chapter 1, Bish. Noncont. Law; 5 Enc. Pl. & Prac. 556.

The main purpose of the summons is to bring the parties together, and then the pleadings *pro* and *con* commence, for the statute provides for their coming together and beginning the suit without any summons (section 19), and the function of the summons is for the most part accomplished, —entirely accomplished so far as relates to the statement of the cause of action. Then and there the plaintiff in his complaint states in a plain and direct manner the facts constituting the cause of action, giving no name to his complaint, either in contract or in tort, leaving it for the justice to give it such name or classification as he may see fit, provided he gives him the proper judgment impliedly containing the concrete point of law which springs up out of the facts alleged and proved. So that the plaintiff does not fail, and there is no good reason why he should fail, by reason of the mistake he may make in the summons of designating his cause of action in this class of cases as belonging to contract or non-contract,—a mistake, if any, at once corrected by his complaint. This must be the true construction, for, as we have seen, the very object of this system of pleading is to enable the justice to apply the proper rule of law to the facts alleged and proved, and give the proper judgment thence arising. Any other view would, at the first step, thwart the main purpose of this Code called chapter 50, by entangling the plaintiff in trying to give the right name to his summons, when the breach of duty should happen to fall within the ill-defined space within which tort and contract mingle or blend or overlie each other in ways partly plain and familiar and partly obscure (see Bish. Noncont. Law, § 72), and comprehending the doctrine of naming a tort and suing on a contract; thus ensnaring the plaintiff into the decision at his peril of legal questions of nomenclature, *etc.*, which it is the main purpose of this new system to avoid. And clauses 9 and 10 of section 50 of chapter 50 imply that the summons needs no amendment in that regard, by providing that before the trial and on the trial the pleadings may be amended, or a variance between proof and the allegations of a pleading may be disregarded

in certain cases as immaterial; and, even if that were not so, the specific statement in the complaint of the facts constituting the cause of action would be taken as qualifying, overruling, controlling, if necessary, the general statement contained in the summons; as, for example, a putting of the cause of action in the wrong class as a wrong conclusion of law (4 Enc. Pl. & Prac. 742), for the plain reason that there is but one civil action, and the complaint is the first and only statement of the constituent facts of the cause of action. If the summons had said "for the recovery of money due by (*quasi*) contract," it would have been technically right; for the statute (section 1, chapter 97) expressly declares the contract of betting and gaming to be void, and will sustain the count for money had and received. See *Thompson* v. *Thompson*, 5 W. Va. 190; *Spring Co.* v. *Knowlton*, 103 U. S. 49; 4 Enc. Pl. & Prac. 749.

Pleadings under the Code system are to be liberally construed, and so dealt with by construction and privilege of amendment as to subserve the administration of substantial justice between the parties. See 4 Enc. Pl. and Prac. 749. But what was this transaction according to its facts? It was a contingent agreement that defendant should have plaintiff's money if he beat plaintiff at a game of craps. This he did, and got plaintiff's money, with plaintiff's consent. The agreement was made and executed, and, without something to intervene, the maxim, "*Volenti non fit injuria,*" would apply. But now the statute comes in, and says, "Your contract was void and each of you was bound to know it," and says further (section 2) that plaintiff, the loser, may recover the money back from defendant, the winner, by suit in court or before a justice, according to the amount or value; thus binding on defendant the personal duty of refunding to plaintiff the money. This duty imposed by law to refund money obtained by unlawful contract defendant has violated. See 1 Poll. Jur. 81, 82. The executory contract of gaming was the occasion of executing it; the execution of it the statute created into a cause of action against the will of the defendant. This duty to refund, this right to have refunded, was not created by any contract, express or to be implied from any facts in the case. It contained but one element in

common with a contract—that of being personal; a right and duty between definite persons. In other respects, this being for money, it is a common-law trespass on the case in assumpsit, or tort *ex contractu*, as plaintiff may please. For a discussion of the doctrine of actions *quasi ex contractu* and *quasi ex delicto*, illustrated by the development and application of the generic action of trespass on the case, see Holmes, Com. Law, 183, etc.; Biglow, Lead. Cas. 20; *Chandelor* v. *Lopus*, 1 Smith, Lead. Cas. (9th Am. Ed.) 319, 330. On the nature and scope of the obligation *of quasi* contracts, see Keener, *Quasi* Cont. c. 1 *et seq*; *Robinson* v. *Welty*, 40 W. Va. 385, 392 (22 S. E. 73); 1 Beach Mod. Cont. Law, § 640, note 5; Sandars, Just. by Hammond, 37; Maine, Anc. Law (3d Am. Ed.) 332.

From this we have enough to see that, if plaintiff had in his summons followed the common-law method of looking at the cause of action *quoad* the form of procedure, he would have said in a civil action for the recovery of money due on (*quasi*) contract; and on the motion to quash, which no doubt would have been made, the plaintiff could have made two sufficient answers: (1) It is not the business of Code pleading to create rights and their correlative duties; but it is a method of procedure to enforce them, as distinguished from the law which gives or defines the right (*Poyser* v. *Minors*, 7 Q. B. Div. 329, 333); and this is a *quasi* contract under the substantive law. (2) What is there on the face of the summons to show that my cause of action is not what I call it—money due on contract? Therefore the motion would on both grounds have been properly overruled; but if it had been sustained, and the amendment been allowed, substituting damages for a wrong, and the complaint had been filed stating in a plain and direct manner the facts constituting the cause of action, the motion to quash would have been again made by defendant's attorney, not only as a matter of caution to save the point, but perhaps in analogy to common-law procedure, with something more of plausibility. But now the plaintiff can meet him with some half a dozen sufficient answers: (1) This now appears to be a noncontract duty, which has been violated—a tort *ex contractu*. It has been created by statute because of the execution of a contract, but against defendant's will. It is therefore a wrong at

my pleasure as to methods of procedure. See Bish. Non-cont. Law, §§ 72, 73; Busw. Lim. § 209, "Torts *ex Contrctu*;" Bliss, Code Pl. § 14; Maxw. Code Pl. p. 36. (2) The parties have now been brought together, and, the summons having performed its chief function, your motion comes too late. (3) It is no part of the fuction of the summons to state the facts constituting the cause of action; that is the function of the complaint. (4) It is the function of the complaint to state the group of facts constituting the cause of action, but need call no names, leaving it for the three successive courts at their own pleasure to call it an action on contract, or an action on noncontract; provided they give him the judgment he shows himself entitled to as arising out of the facts stated and proved (as was done in this case). (5) But I find, on looking to the transcript of the record, that the defendant did not move to quash the writ and dismiss the case until after the complaint had been filed; and then having appeared he could only make defense by answer, or by exception to the complaint as not sufficiently explicit to be understood, or as containing no cause of action; so that the motion to quash the summons was out of time and out of place. In other words, the summons can not, at any stage, be quashed on that ground. (6) The appeal to the circuit court was allowed, and then it was the duty of that court to try the case *de novo*, upon the pleadings made up in the justice's court, or to permit the pleadings to be amended before or during the trial of the appeal when substantial justice would be promoted by the amendment.

As no error in the pleadings has been pointed out, and as I have not been able to discover any, I take for granted that substantial justice did not require any to be made, and that the judgment, which is plainly right on the merits, ought to be affirmed.

*Affirmed.*